1  LATHAM & WATKINS LLP
      Perry J. Viscounty (Bar No. 132143)
2  perry.viscounty@lw.com
   650 Town Center Drive, 20th Floor
3  Costa Mesa, California  92626-1925
   Telephone:  (714) 540-1235
4  Facsimile:   (714) 755-8290

5  LATHAM & WATKINS LLP
      Jennifer L. Barry (Bar No. 228066)
6  jennifer.barry@lw.com
   600 West Broadway, Suite 1800
7  San Diego, California  92101-3375
   Telephone:  (619) 236-1234
8  Facsimile:   (619) 696-7419

9  Attorneys for Plaintiff
   SYMANTEC CORPORATION   E-filing

10

11                 UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13  SYMANTEC CORPORATION, a Delaware        Case No.  CV 11 3146
    Corporation,
14
                          Plaintiff,        **COMPLAINT FOR:**
15
          v.                                **(1) TRADEMARK INFRINGEMENT
16                                              (LANHAM ACT, 15 U.S.C. § 1114)**

17  JOHNS CREEK SOFTWARE, INC., a           **(2) UNFAIR COMPETITION/FALSE
    Georgia Corporation, STEPHEN                DESIGNATION OF ORIGIN
18  CHEATHAM, an individual, and DOES 1-        (LANHAM ACT, 15 U.S.C. § 1125(a))**
    10,
19                                          **(3) CYBERSQUATTING
                          Defendants.           (LANHAM ACT, 15 U.S.C. § 1125(d))**
20
                                            **(4) COPYRIGHT INFRINGEMENT
21                                              (COPYRIGHT ACT, 17 U.S.C. § 501)**

22                                          **(5) TRAFFICKING IN COUNTERFEIT
                                                LABELING/PACKAGING
23                                              (18 U.S.C. § 2318)**

24                                          **(6) UNFAIR COMPETITION
                                                (CAL. BUS. & PROF. CODE § 17200)**
25
                                            **(7) COMMON LAW TRADEMARK
26                                              INFRINGEMENT**

                                            **(8) COMMON LAW UNFAIR
27                                              COMPETITION**

28                                          **DEMAND FOR JURY TRIAL**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY        SD\776424.1                                    Complaint

Plaintiff Symantec Corporation ("Symantec" or "Plaintiff"), for its Complaint against Johns Creek Software, Inc., Stephen Cheatham and Does 1-10 ("Defendants"), alleges as follows:

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

1.      This is a civil action alleging trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a); cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); copyright infringement under the Copyright Act, 17 U.S.C. § 501; trafficking in counterfeit labels, illicit labels, or counterfeit documentation or packaging, 18 U.S.C. § 2318; unfair competition under California Business & Professions Code §§ 17200 *et seq.*; California common law trademark infringement; and California common law unfair competition.

2.      This Court has exclusive subject matter jurisdiction over Plaintiff's copyright infringement claim under the Copyright Act pursuant to 28 U.S.C. § 1338(a).  Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over Plaintiff's claims for relief for violation of the federal trademark and unfair competition statutes.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over Plaintiff's state law unfair competition claims, in that the claims are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), in that all of Plaintiff's claims arise out of a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendants because they have conducted substantial business and on information and belief maintain offices in this State.

4.      Venue in this Court exists under 28 U.S.C. § 1391(b)(1) and (c), as Defendants are deemed residents of this District for venue purposes, as well as under subsection (b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

5.      This is an Intellectual Property Action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).  Alternatively, this case may be assigned to the San Jose

Division, as a substantial part of the events which give rise to the claims alleged below arose in Santa Clara County.

## PARTIES

6.    Symantec is a Delaware corporation with a principal place of business at 350 Ellis Street, Mountain View, California 94043.

7.    On information and belief, Johns Creek Software, Inc. ("Johns Creek") is a Georgia corporation having its principal place of business at 5174 McGinnis Ferry Rd. #175, Alpharetta, Georgia 30005.  Johns Creek operates multiple websites that purport to sell Symantec products, including at least: *nortons.com, nortonexpert.com, nortontechsupport.com, nortonhelp.com, nortonsoftwaredirect.com* and *mynortonstore.com*.

8.    On information and belief, Stephen Cheatham is an individual residing in Alpharetta, Georgia.  Cheatham is the CEO and registered agent for Johns Creek.  On information and belief, Cheatham was personally aware of, and authorized, approved, ratified, participated in and instigated the wrongful conduct alleged in this Complaint.

9.    Symantec is ignorant of the true names of defendants Does 1 through 10, inclusive, and therefore sues those defendants by such fictitious names.  Symantec is informed and believes, and on that basis alleges, that defendants Does 1 through 10, inclusive, are responsible for the acts alleged in this Complaint.  When the true names of such fictitious defendants are ascertained, Symantec will seek leave of this Court to amend this Complaint to name those individuals or entities.

10.    Symantec is informed and believes, and on that basis alleges, that each of the Defendants was the agent and employee of the remaining Defendants and, at all times mentioned, acted within the course and scope of such agency and employment.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Symantec and Its Norton Products

11.    Symantec is one of the world's largest software companies with approximately 17,500 employees in more than 40 countries.  The company provides security, storage and systems management solutions to help its customers secure and manage their information and

data.

12.     Symantec offers multiple software products, for both large companies and individual consumers.  Many of Symantec's consumer products are (or have been) offered under the Norton brand, including: Norton 360, Norton AntiVirus, Norton Internet Security, Norton Utilities, Norton SystemWorks, Norton Save & Restore, Norton Ghost, Norton Smartphone Security, and Norton Online Backup.

13.     Symantec also offers a "System Builder" version of some of its products, e.g., Norton AntiVirus System Builder Edition.  A System Builder edition of a product is intended to be part of a pre-installed package sold in new computer systems.  The System Builder software is not authorized to be sold as a standalone product.

14.     Symantec offers its consumer software products for sale in retail stores or via an electronic download.  The retail version typically includes a product disk in a box with a card that contains the product activation key ("product key").  The downloadable version is downloaded from Symantec's website with the product key provided upon purchase and an optional product disk available to be shipped to the customer.

15.     The product key is an individual alphanumeric code that is necessary to activate the software product during or shortly after installation.  The product key provides assurances to customers that they have purchased genuine Symantec software, and it is also used during the product activation process.

### Symantec's Intellectual Property Rights

16.     Symantec owns rights in the trademarks SYMANTEC (the "Symantec Mark") and NORTON (the "Norton Mark") based on its longstanding use of those marks on computer software products and related products and services.

17.     Symantec is also the owner of numerous United States federal trademark registrations, including:

(a)     SYMANTEC, No. 1,683,688, issued on April 22, 1992, for computer programs for use in business applications in Class 9, with a first use date of at least as early as November 1985.  This registration is incontestable.

(b)   SYMANTEC , No. 1,654,777, issued on August 27, 2991, for computer programs for use in business applications in Class 9, with a first use date of at least as early as November 1985. This registration is incontestable.

(c)   SYMANTEC, No. 3,274,187, issued on August 7, 2007, for computer antivirus software and various other types of software in Class 9, with a first use date of at least as early as November 1985.

(d)   NORTON ANTIVIRUS, No. 1,758,084, issued on March 16, 1993, for computer programs for use in identifying and removing computer viruses in Class 9, with a first use date of at least as early as January 1991. This registration is incontestable.

(e)   NORTON 360, No. 3,474,148, issued on July 22, 2008, for computer antivirus software in Class 9, with a first use date of at least as early as January 29, 2007.

(f)   NORTON INTERNET SECURITY, No. 3,314,016, issued on October 16, 2007, for computer antivirus software in Class 9, with a first use date of at least as early as September 1999.

(g)   NORTON, No. 3,700,317, issued on October 20, 2009, for computer software in Class 9; computer services in Class 42; and monitoring of computer systems in Class 45, with a first use date of at least as early as February 1987.

(h)   NORTON SYSTEMWORKS, No. 2,488,092, issued on September 11, 2001, for computer utility software in Class 9, with a first use date of at least as early as September 17, 1998. This registration is incontestable.

(i)   NORTON UTILITIES, No. 1,508,960, issued on October 18, 1988, for pre-recorded computer programs in Class 9, with a first use date of at least as early as January 1983. This registration is incontestable.

18.   Symantec is also the owner of numerous federal trademark applications, including:

(a)   SYMANTEC, Serial No. 85/144826, filed on October 4, 2010, for computer software in Class 9; printed materials in Class 16; commercial information and directory services in Class 35; providing extended warranties in Class 36; telecommunications

services in Class 38; educational services in Class 41; providing authentication of identity in Class 42; and business services in Class 45.

(b)   ⊘ Norton, Serial No. 85/163095, filed on October 27, 2010, for computer antivirus software in Class 9; computer user manuals in Class 16; electronic storage of data files in Class 39; computer services in Class 42; and monitoring of computer systems in Class 45.

(c)   ⊘ Symantec, Serial No. 85/163091, filed on October 27, 2010, for computer antivirus software in Class 9; computer user manuals in Class 16; transmittal of anti-virus software via a global computer network in Class 38; electronic storage of data files in Class 39; computer services in Class 42; and monitoring of computer systems in Class 45.

(d)   ⊘ Symantec.cloud, Serial No. 85/185160, filed on November 24, 2010, for telecommunications services in Class 38; electronic storage of data files in Class 39; computer services in Class 42; and monitoring of computer systems in Class 45.

(e)   SYMANTEC O3, Serial No. 85/237296, filed on February 8, 2011, for computer antivirus software in Class 9; computer services in Class 42; and business services in Class 45.

19.   Symantec's federal trademark registrations are referred to as the "Symantec Trademark Registrations." The Symantec Trademark Registrations constitute prima facie evidence that the marks are valid and that Symantec is entitled to the exclusive use of the marks in commerce throughout the United States on software products, and in connection with goods and services related thereto.

20.   Through extensive use, marketing, branding and promotion, the Symantec Mark and the Norton Mark are well-known and famous, enjoying substantial recognition, goodwill and association with Symantec. The public distinguishes Symantec's products from those of other software companies on the basis of the Symantec Mark and the Norton Mark. The Symantec Mark and the Norton Mark are distinctive and have acquired secondary meaning in the United States.

21.   Symantec also owns the copyright to its Norton software products. Symantec is the owner of numerous United States federal copyright registrations, including:

| Title | Reg. No. | Date |
|---|---|---|
| Norton AntiVirus 2010 | TX0007354538 | 2010 |
| Norton AntiVirus 2009 | TX0006929365 | 2008 |
| Norton AntiVirus 2008 | TX0006929366 | 2007 |
| Norton AntiVirus 2007 | TX0006503492 | 2006 |
| Norton AntiVirus 2006 (for Windows) | TX0006312240 | 2005 |
| Norton 360 3.0 | TX0007214917 | 2009 |
| Norton Internet Security 2010 | TX0007172194 | 2009 |
| Norton Internet Security 2009 | TX0006929368 | 2008 |
| Norton Internet Security 2008 | TX0006929364 | 2007 |
| Norton Internet Security 2007 | TX0006503491 | 2006 |
| Norton Internet security 2006 | TX0006501447 | 2005 |
| Norton Ghost 15.0 | TX0007165344 | 2009 |
| Norton Ghost 10.0 (for Windows) | TX0006358626 | 2005 |
| Norton Ghost 9.0 (for Windows); Norton Ghost 2003 (for Windows) | TX0006361699 | 2004 |
| Norton Ghost 2003 (for Windows); Ghost 5.0e (for Windows) | TX0006361698 | 2002 |

22.     Symantec's federal copyright registrations are referred to as the "Symantec Copyright Registrations." These registrations constitute *prima facie* evidence of the validity of Symantec's copyrights and of the facts stated in the registration certificates.

## Defendants' Marketing and Sale of Unauthorized

## and Counterfeit Symantec Products

23.     Defendants participated in Symantec's Affiliate and Partner Programs for a period of time in the early to mid-2000s, and offered many of the Norton products to consumers on their websites. During that period, Symantec was forced to contact Defendants about violations of Symantec's branding and trademark policies, including the registration and use of Defendants' infringing domain names.

24.     In March 2009, Symantec learned of a complaint lodged against it with the Washington State Attorney General's office by a customer of Defendants. This customer had ordered the Norton AntiVirus product but never received it even though the purchase price was deducted from her checking account. This customer believed that she had purchased the product directly from Symantec and attempted to contact Symantec about the purchase on several occasions, before finally lodging a complaint against Symantec.

25.     In September 2009, Symantec determined that Defendants were selling Symantec's System Builder software in an unauthorized manner as a standalone product. After

further investigation, Symantec also learned that Defendants were selling product keys without also selling the accompanying software, which would potentially allow customers to convert a trial version of Symantec's software product into a fully operational copy.

26.    Based on this conduct, Symantec terminated Defendants' participation in Symantec's programs in September 2009.  Symantec notified Defendants of this termination via an email dated September 16, 2009.  This email specifically instructed Defendants to cease all use of Symantec's trademarks, logos, and any domain names that contained those trademarks.  A copy of this email is attached as Exhibit A.

27.    Despite this termination, Defendants continued, and still continue, to market and sell purported Symantec products on their websites.

28.    On or about February 12, 2010, Symantec conducted a test purchase of the Norton AntiVirus 2010 product from Defendants' *mynortonstore.com* website.  Defendants shipped a DVD labeled as Norton AntiVirus 2010 in a plain white envelope, with a small label bearing the "Norton by Symantec" logo and a product key.  No other documentation or packaging was included with the shipment.  The invoice accompanying this purchase also contained the "Norton by Symantec" logo.

29.    From this test purchase, Symantec determined that the product key provided with the DVD was for Symantec's System Builder software, which was not the appropriate type of key assigned to this type of standalone purchase.  Symantec further determined that the DVD was counterfeit.

30.    In April 2010 Defendants suggested that the parties could "conclude [their] relationship" by Symantec purchasing Defendants' portfolio of domain names that incorporated Symantec's trademarks.  Defendants, however, refused to provide a complete list of all of those domain names.

31.    On or about May 14, 2010, Symantec sent a letter to Defendants about their sale of counterfeit Symantec products, and demanded that Defendants cease such activity and provide to Symantec information about the source of these counterfeit products.  A copy of this letter is attached as Exhibit B.

32.     On or about June 4, 2010, Symantec conducted a second test purchase of the Norton AntiVirus 2010 product from Defendants' *nortons.com* website. Defendants again shipped a DVD that was labeled and packaged in an almost identical manner to the first test purchase. No documentation or packaging was included with the shipment, and the product key provided was once again a System Builder product key. The DVD was again determined to be counterfeit.

33.     Symantec sent Defendants a follow-up letter on October 14, 2010, reiterating its request that Defendants cease all sale of counterfeit and unauthorized Symantec products and transfer all infringing domain names to Symantec. A copy of this letter is attached as Exhibit C.

34.     In response to this letter, Defendants admitted that they had burned copies of Symantec's software to DVDs to sell to customers.

35.     Symantec then conducted a third test purchase in early January 2011 of the Norton Internet Security 2011 product. The software DVD was once again shipped in a plain envelope, this time with the product key handwritten on the back of the envelope. No documentation or packaging was included in the shipment.

36.     Symantec then sent Defendants a second follow-up letter on January 31, 2011 regarding its continuing unlawful conduct. A copy of this letter is attached as Exhibit D.

37.     Defendants responded on February 9, 2011, denying any wrongdoing and refusing to comply with Symantec's requests. A copy of this response letter is attached as Exhibit E.

## Symantec is Being Harmed By Defendants'
## Continuing Infringement and Unlawful Conduct

38.     Due to Defendants' willful continuing infringement and unlawful conduct, Symantec is now forced to bring this action to protect its valuable intellectual property rights. Symantec had to retain counsel and has had to incur substantial fees and costs to bring this suit.

39.     Defendants' activities have caused and will cause irreparable harm to Symantec for which it has no adequate remedy at law, as Defendants' conduct interferes with Symantec's goodwill and customer relationships and will substantially harm Symantec's reputation as a source of high quality products, as well as dilute the substantial value of Symantec's name and

trademark. Defendants' conduct also continues to infringe Symantec's valuable copyrights.

40.     Symantec's interest in protecting its intellectual property rights and products and services from customer confusion outweighs any potential harm to Defendants. The public interest is best served by granting the requested relief to Symantec against Defendants.

## FIRST CLAIM FOR RELIEF

### Lanham Act - Federal Trademark Infringement - 15 U.S.C. § 1114

41.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

42.     Symantec owns the Symantec Trademark Registrations. The marks reflected in the Symantec Trademark Registrations are strong and distinctive, designating Symantec as the source of all goods advertised, marketed, sold or used in connection with those marks.

43.     Symantec is the senior user of the trademarks reflected in the Symantec Trademark Registrations, as it began use of those marks in interstate commerce more than two decades ago, which was long prior to Defendants' first sale of Symantec products.

44.     Defendants do not have authorization, license or permission from Symantec to market and sell products under the marks reflected in the Symantec Trademark Registrations.

45.     Defendants were aware that the marks reflected in the Symantec Trademark Registrations were owned by Symantec, as Defendants were previously part of the Symantec Partner Program. Defendants' use of Symantec's trademarks was intended to confuse consumers into believing that Defendants' products were authentic and authorized Symantec products. Thus Defendants' unauthorized use of Symantec's marks was knowing, intentional and willful.

46.     Defendants have knowingly, intentionally and willfully used, and continue to use, the marks reflected in the Symantec Trademark Registrations on counterfeit and unauthorized goods, and have knowingly, intentionally and willfully continued to use those marks to market and sell the counterfeit products.

47.     On information and belief, Defendants' use of the marks reflected in the Symantec Trademark Registrations on counterfeit and unauthorized software products is likely

to cause confusion or mistake, or to deceive as to source, origin, affiliation, or sponsorship of the products offered for sale, marketed and sold by Defendants.

48.     As a direct and proximate result of Defendants' wrongful conduct, Symantec has been and will continue to be damaged.

49.     Defendants' actions thus constitute trademark infringement.

50.     Unless an injunction is issued enjoining any continuing or future use of the marks reflected in the Symantec Trademark Registrations by Defendants, such continuing or future use is likely to continue to cause confusion, mistake or to deceive as to source, origin, affiliation, or sponsorship, and thereby to damage Symantec irreparably.  Symantec has no adequate remedy at law.

51.     Pursuant to 15 U.S.C. §1117(a), Symantec is entitled to an order: (a) requiring Defendants to account to Symantec for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (b) awarding all damages sustained by Symantec caused by Defendants' conduct.

52.     Defendants' conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Symantec is as a result entitled to an award of treble damages against Defendants.

53.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Symantec is thus entitled to an award of attorneys' fees and costs.

54.     Defendants intentionally used, and continue to use, the marks reflected in the Symantec Trademark Registrations, knowing such marks are counterfeit, in connection with the sale, offering for sale, or distribution of goods.  Symantec is therefore entitled to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(b).

55.     Alternatively, Symantec is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. § 1117(c).

## SECOND CLAIM FOR RELIEF

## Lanham Act - Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a)

56.     Symantec incorporates by reference the factual allegations set forth in

Paragraphs 11 through 40 above.

57.     The Symantec Mark and the Norton Mark are strong and distinctive, designating Symantec as the source of all goods advertised, marketed, sold or used in connection with those marks.

58.     Symantec is the senior user of the Symantec Mark and the Norton Mark, as it began use of those marks in interstate commerce more than two decades ago, which was long prior to Defendants' first sale of Symantec products.

59.     On information and belief, through their use of the counterfeit Symantec Mark and Norton Mark, Defendants intended to, and did in fact, confuse and mislead consumers, and did misrepresent and create the false impression that Symantec somehow authorized, originated, sponsored, approved, licensed or participated in Defendants' use of the Symantec Mark and Norton Mark.

60.     In fact, there is no connection or association or licensing relationship between Symantec and Defendants.

61.     On information and belief, Defendants' use of the Symantec Mark and Norton Mark is likely to cause confusion as to the origin and authenticity of Defendants' products and is likely to cause others to believe that there is a relationship between Defendants and Symantec.

62.     As a direct and proximate result of Defendants' wrongful conduct, Symantec has been and will continue to be damaged.

63.     Defendants' activities have caused and will cause irreparable harm to Symantec for which it has no adequate remedy at law, in that (i) Symantec's marks are a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes an interference with Symantec's goodwill and customer relationships and will substantially harm Symantec's reputation as a source of high quality goods as well as dilute the substantial value of Symantec's name and trademarks; and (iii) Defendants' wrongful conduct, and the damages resulting to Symantec, are continuing.  Accordingly, Symantec is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

64.     Pursuant to 15 U.S.C. §1117(a), Symantec is entitled to an order: (a) requiring Defendants to account to Symantec for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (b) awarding all damages sustained by Symantec caused by Defendants' conduct.

65.     Defendants' conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Symantec is as a result entitled to an award of treble damages against Defendants.

66.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Symantec is thus entitled to an award of attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Anticybersquatting Consumer Protection Act - 15 U.S.C. § 1125(d)

67.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

68.     Symantec is the owner of the Symantec Mark and the Norton Mark, as well as the Symantec Trademark Registrations.

69.     Defendants have a bad faith intent to profit from the Symantec Mark and the Norton Mark.

70.     On information and belief, Defendants are using domain names that are identical or confusingly similar to the Symantec Mark and the Norton Mark, including, but not limited to, *nortons.com, nortonexpert.com, nortontechsupport.com, nortonhelp.com, nortonsoftwaredirect.com* and *mynortonstore.com.*

71.     Through use of these domain names, Defendants intend to divert consumers from Symantec's websites to Defendants' websites to sell counterfeit and unauthorized products that will harm the goodwill represented by Symantec's marks, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the sites.

72.     Unless an injunction is issued enjoining any continuing or future use of the Symantec Mark and the Norton Mark in domain names by Defendants, such continuing or

future use is likely to continue to cause confusion, mistake or to deceive as to source, origin, affiliation, or sponsorship, and thereby to damage Symantec irreparably. Symantec has no adequate remedy at law.

73.     Symantec is also entitled to a transfer of all of Defendants' infringing domain names pursuant to 15 U.S.C. § 1125(d)(1)(C).

74.     Pursuant to 15 U.S.C. §1117(a), Symantec is entitled to an order: (a) requiring Defendants to account to Symantec for any and all profits derived by Defendants from their actions, to be increased in accordance with the applicable provisions of law; and (b) awarding all damages sustained by Symantec caused by Defendants' conduct.

75.     Defendants' conduct was intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Symantec is as a result entitled to an award of treble damages against Defendants.

76.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Symantec is thus entitled to an award of attorneys' fees and costs.

77.     Alternatively, Symantec is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. § 1117(d).

## FOURTH CLAIM FOR RELIEF

### Copyright Infringement - 17 U.S.C. § 501

78.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

79.     Symantec owns the copyright, and Symantec Copyright Registrations, for its software products.

80.     Defendants infringed Symantec's copyrights by copying and distributing counterfeit and unauthorized versions of Symantec's software products.

81.     Defendants' actions were knowing, intentional and willful.

82.     These infringing actions have caused, and continue to cause, irreparable injury to Symantec. Symantec has no adequate remedy at law. Symantec is accordingly entitled to an injunction pursuant to 17 U.S.C. § 502.

83.     Symantec is further entitled to its actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(a).

84.     Alternatively, Symantec is entitled to elect statutory damages instead of actual damages and profits, pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages due to Defendants' willful infringement.

85.     Symantec is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## FIFTH CLAIM FOR RELIEF

### Trafficking In Counterfeit Labels, Illicit Labels, Or Counterfeit Documentation Or Packaging - 18 U.S.C. § 2318

86.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

87.     On information and belief, Defendants have knowingly, and without Symantec's authorization, trafficked in a counterfeit label or illicit label affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany copies of Symantec's copyrighted software programs.

88.     On information and belief, Defendants used the mail or a facility of interstate commerce to commit these activities.

89.     These infringing actions have caused, and continue to cause, irreparable injury to Symantec.  Symantec has no adequate remedy at law.  Symantec is accordingly entitled to an injunction pursuant to 18 U.S.C. § 2318(e)(2)(A).

90.     Symantec is further entitled to its actual damages and Defendants' profits, pursuant to 18 U.S.C. § 2318(e)(2)(C)(ii)(I).

91.     Alternatively, Symantec is entitled to elect statutory damages instead of actual damages and profits, pursuant to 18 U.S.C. § 2318(e)(2)(C)(ii)(II).

92.     Symantec is entitled to its attorneys' fees and costs pursuant to 18 U.S.C. § 2318(e)(2)(C)(i).

/ / /

## SIXTH CLAIM FOR RELIEF

### Unfair Competition - California Business & Professions Code §§ 17200 *et seq.*

93.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

94.     The above-described acts and practices by Defendants are likely to mislead or deceive the general public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq.*

95.     The above-described acts further constitute business acts that violate Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and are therefore unlawful.

96.     The above-described acts further constitute business acts that violate the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and are therefore unlawful.

97.     The above-described acts further constitute business acts that violate the Copyright Act, 17 U.S.C. § 501, and are therefore unlawful.

98.     The above-described acts further constitute business acts that violate 18 U.S.C. § 2318 and are therefore unlawful.

99.     The unfair, unlawful, and fraudulent business practices of Defendants described above present a continuing threat and are meant to deceive members of the public.

100.     As a direct and proximate result of Defendants' wrongful conduct, Symantec has been injured in fact and has lost money and profits, and has suffered injury to its reputation and goodwill.  Such harm will continue unless Defendants' acts are enjoined by the Court. Symantec has no adequate remedy at law.  Accordingly, Symantec is entitled to an injunction prohibiting Defendants from continuing the practices described above.

## SEVENTH CLAIM FOR RELIEF

### Common Law Trademark Infringement

101.     Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

102.     Symantec has valid and protectable common law rights in the Symantec Mark and the Norton Mark.

103.    Symantec is the senior user of the Symantec Mark and the Norton Mark.

104.    Defendants' conduct, as described above, constitutes infringement of Symantec's common law rights in the Symantec Mark and the Norton Mark.

105.    Defendants' use of the Symantec Mark and the Norton Mark on counterfeit and unauthorized products is likely to cause confusion as to the origin of Defendants' products and is likely to cause others to believe that there is a relationship between Defendants and Symantec.

106.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of the reputation of Symantec and the substantial goodwill it has built up in the Symantec Mark and the Norton Mark.

107.    As a direct and proximate result of Defendants' wrongful conduct, Symantec has been and will continue to be damaged.

108.    Unless an injunction is issued enjoining any continuing or future use of the Symantec Mark and the Norton Mark, such continuing or future use is likely to continue to cause confusion and thereby to damage Symantec irreparably.  Symantec has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

### Common Law Unfair Competition

109.    Symantec incorporates by reference the factual allegations set forth in Paragraphs 11 through 40 above.

110.    Symantec has expended significant time and expense in developing the Symantec Mark and the Norton Mark and the high-quality products it markets and sells under those marks.  The Symantec Mark and the Norton Mark have been very successful and have developed a substantial reputation and goodwill in the marketplace.

111.    Through their actions as described above, Defendants have misappropriated Symantec's efforts and are exploiting the Symantec Mark and the Norton Mark and Symantec's reputation to market and sell their counterfeit and unauthorized software products.  These actions constitute unfair competition.

112.    As a direct and proximate result of Defendants' wrongful conduct, Symantec has been and will continue to be damaged.

113.    Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, Symantec will continue to be damaged irreparably.  Symantec has no adequate remedy at law.

114.    On information and belief, Defendants have acted willfully, intentionally and maliciously, such that Symantec is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Symantec prays for the following relief:

A.    An injunction ordering that Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service:

1.    Cease creating, promoting, marketing, selling, and/or distributing counterfeit Symantec products;

2.    Cease all use and never use Symantec's trademarks or confusingly similar marks, and cease all creation, promotion, marketing, selling, and/or distribution of goods and/or services in connection with those marks;

3.    Never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public, or individual members thereof, to believe that any products or services produced, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with Symantec, or are licensed, approved or authorized in any way by Symantec;

4.    Never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief that Defendants, or any of their goods or services, are related to, authorized or sponsored by Symantec;

5.    Never register any domain names that contain any of Symantec's trademarks, or any domain names confusingly similar to Symantec's trademarks;

6.     Cease all infringement and never infringe Symantec's copyrights;

7.     Cease all trafficking and never traffic in counterfeit labels, documentation, and/or packaging;

8.     Never unfairly compete with Symantec in any manner whatsoever, or engage in any unfair, fraudulent or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any Symantec trademark; and

9.     Never unfairly compete with Symantec by misappropriating Symantec's efforts and exploiting the reputation, goodwill and fame of Symantec's marks.

B.     An order pursuant to 15 U.S.C. § 1116(a) directing Defendants to file with the Court and serve upon Symantec's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

C.     An order pursuant to 15 U.S.C. § 1125(d)(1)(C) transferring all domain names in Defendants' possession, custody or control that contain any of Symantec's trademarks.

D.     An order pursuant to 15 U.S.C. § 1118 and 18 U.S.C. § 2318(e)(2)(B) directing Defendants to deliver up for destruction all existing inventory and associated items, including labeling, packaging and advertising materials, of Defendants' infringing products.

E.     An order pursuant to 15 U.S.C. § 1116(d)(1)(A) directing Defendants to deliver to Symantec all records documenting the manufacture, sale, or receipt of Defendants' counterfeit and unauthorized products.

F.     An order finding that, by the acts complained of above, Defendants have infringed Symantec's federally registered trademarks in violation of 15 U.S.C. § 1114.

G.     An order finding that, by the acts complained of above, Defendants have created a false designation of origin and/or a false representation of association, in violation of 15 U.S.C. § 1125(a).

H.     An order finding that, by the acts complained of above, Defendants have engaged in cybersquatting, in violation of 15 U.S.C. § 1125(d).

I.      An order finding that, by the acts complained of above, Defendants have engaged in copyright infringement, in violation of 17 U.S.C. § 501.

J.      An order finding that, by the acts complained of above, Defendants have engaged in trafficking in counterfeit and/or illicit labels, documentation and/or packaging, in violation of 18 U.S.C. § 2318.

K.      An order finding that, by the acts complained of above, Defendants have engaged in unfair competition and acts of unfair and deceptive business practices in violation of California Business & Professions Code §§ 17200 et seq.

L.      An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

M.      An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition.

N.      An order pursuant to 15 U.S.C. § 1117(a) compelling Defendants to account to Symantec for any and all profits derived by them from their unlawful and infringing conduct.

O.      An order awarding Symantec damages as follows:

1.      Pursuant to 15 U.S.C. § 1117(a), Symantec's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages and profits pursuant to 15 U.S.C. § 1117(b) based on Defendant willful use of counterfeit marks; or, at Symantec's election, the maximum allowable amount of statutory damages permitted under 15 U.S.C. § 1117(c) for Defendants' willful use of counterfeit marks;

2.      Pursuant to 15 U.S.C. § 1117(a), Symantec's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of cybersquatting; or, at Symantec's election, the maximum allowable amount of statutory damages permitted under 15 U.S.C. § 1117(d) for Defendants' acts of cybersquatting;

3.      Pursuant to 17 U.S.C. § 504(a), Symantec's actual damages as well as all of Defendants' profits or gains of any kind from their acts of copyright infringement; or, at Symantec's election, the maximum allowable amount of statutory damages permitted under

17 U.S.C. § 504(c) based on Defendants' willful copyright infringement;

4. Pursuant to 18 U.S.C. § 2318(e)(2)(C)(ii)(I), Symantec's actual damages as well as all of Defendants' profits or gains of any kind from their acts of trafficking in counterfeit/illicit labeling, documentation and/or packaging; or, at Symantec's election, the maximum allowable amount of statutory damages permitted under 18 U.S.C. § 2318(e)(2)(C)(ii)(II); and

5. Punitive damages pursuant to California common law.

P. An order awarding Symantec its attorneys' fees as follows:

1. Pursuant to 15 U.S.C. § 1117(a), a determination that this is an exceptional case of trademark infringement, false designation of origin and unfair competition, entitling Symantec to its reasonable attorneys' fees;

2. Pursuant to 15 U.S.C. § 1117(b), Symantec's reasonable attorneys' fees based on Defendants' use of counterfeit marks;

3. Pursuant to 17 U.S.C. § 505, Symantec's reasonable attorneys' fees based on Defendants' copyright infringement; and

4. Pursuant to 18 U.S.C. § 2318(e)(2)(C)(i), Symantec's reasonable attorneys' fees based on Defendants' trafficking in counterfeit/illicit labeling, documentation and/or packaging.

Q. An order awarding Symantec all of its costs, disbursements and other expenses incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505 and 18 U.S.C. § 2318(e)(2)(C)(i).

R. An order awarding Symantec interest.

S. An order awarding Symantec such other relief as the Court deems appropriate.

Dated: June 24, 2011

LATHAM & WATKINS LLP

By: [signature]
Perry J. Viscounty
Jennifer L. Barry

Attorneys for Plaintiff
SYMANTEC CORPORATION

1

## JURY DEMAND

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 3-6, Plaintiff

3

demands a trial by jury.

4

Dated: June 24, 2011

5

LATHAM & WATKINS LLP

6

By: _____

7

Perry J. Viscounty
Jennifer L. Barry

8

Attorneys for Plaintiff
SYMANTEC CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  A

**David Majors**

| | |
|---|---|
| From: | David Majors |
| Sent: | Wednesday, September 16, 2009 1:44 PM |
| To: | steve@creeknet.com |
| Cc: | David Majors |
| Subject: | Notice of Removal from Symantec Programs |
| | |
| Importance: | High |

Dear Mr. Cheatham:

This e-mail is intended to notify you of your removal from the Symantec System Builder Program and your termination from the Symantec Registered Partner Program.

As you know, Symantec System Builder products are not intended to be advertised or sold on a stand-alone basis, and each System Builder Product must be sold in conjunction with a computer system. Symantec has determined that your company has sold products in an unauthorized manner in violation of these terms; therefore, it is being immediately removed from the System Builder Program.

It has also come to our attention that you have been selling Symantec software keys independently from the software. This is an inappropriate and unacceptable manner of distribution. While it is unfortunate that you were the apparent victim of a theft, (in addition to the SB discussion above) you should not have been selling those keys separate from the product itself. You should also cease this method of distribution immediately.

This e-mail also serves as notice of your removal from the Symantec Registered Partner Program. Accordingly, you should cease using Symantec's trademark(s), logo(s), and any other marketing collateral provided to you as part of that Program. This includes, *inter alia*, using the Symantec and/or Norton logos on your website(s) and using the any domain names that include Symantec's registered trademarks (e.g. mynortonstore.com, nortons.com, nortonsoftwarestore.com). Any further use of these domain names would likely be an infringement of Symantec's trademark rights for which Symantec reserve its rights. You should also refrain from referring to yourself as a Symantec partner (of any kind) or otherwise give the impression that your company has an affiliation with Symantec.

Thank you in advance for your prompt attention to this matter. Please contact me directly if you have any questions.

Sincerely,

s/David Majors

_____

David Majors
Sr. Corporate Counsel
Intellectual Property Legal Department

Symantec Corporation
350 Ellis Street
Mountain View, CA 94043
www.symantec.com
Office:  (650) 527-5116
Facsimile:  (650) 527-0838
E-mail:  david_majors@symantec.com

1

EXHIBIT B

 symantec..

David Majors
Sr. Corporate Counsel
Symantec Corporation
www.symantec.com
david_majors@symantec.com

May 14, 2010

**VIA OVERNIGHT MAIL**

Mike Rodenbaugh
Rodenbaugh Law
548 Market Street
San Francisco, CA 94104

      Re: Sales of Counterfeit Symantec Product by John's Creek Software

Dear Mr. Rodenbaugh:

      I am writing this letter on behalf of Symantec Corporation. Symantec owns the trademarks and holds the copyrights for numerous computer software products bearing the Norton™, Symantec™ and Veritas™ marks. Symantec has been producing these computer software products for many years and has invested heavily in developing its software. As a result, Symantec enjoys substantial brand name recognition and consumer goodwill associated with high quality products. Symantec's rights are evidenced by, among other things, registration of its trademarks and copyrights with the United States Patent and Trademark Office and the United States Copyright Office.

      You have received this letter because it has recently come to Symantec's attention that your client has been selling counterfeit Symantec software products, either in his individual capacity or in connection with a business known as Johns Creek Software. The counterfeit products include, without limitation, Norton AntiVirus™.

      The unauthorized use of Symantec's trademarks and the unauthorized copying of Symantec's copyrighted works infringe Symantec's intellectual property rights in violation of state and federal law. Accordingly, your client's distribution and sale of counterfeit Symantec products and marks is illegal. As a result, Symantec would be entitled to monetary damages, recovery of its attorneys' fees, injunctive relief and impoundment of counterfeit goods, among other remedies.

      Symantec is presently contemplating what, if any, further action to take in this matter. If your client is interested in attempting to resolve this matter amicably, he will need to identify his source(s) of these counterfeit goods and the identifying information for any customers to whom your client has sold these goods. Your client must also agree to turn over to Symantec copies of all documents that relate to his sale or purchase of these goods and any remaining inventory of



David Majors
Sr. Corporate Counsel
Symantec Corporation
www.symantec.com
david_majors@symantec.com

counterfeit goods in his possession, custody or control. If you or your client have any doubts about the authenticity of a particular product then Symantec may arrange for the product(s) to be examined. Furthermore, your client should immediately cease all sales of counterfeit and/or unauthorized Symantec product(s).

Please contact me immediately if you are willing to share information concerning your client's suppliers and sales activities. If your client does not cooperate promptly and fully, Symantec reserves its rights to take all necessary steps to enforce its rights.

This letter gives your client actual notice of Symantec's exclusive rights to its name, trademark, and copyrighted works. Any continued sale by your client of counterfeit Symantec software would constitute willful infringement of Symantec's rights.

Your client is specifically warned to preserve all records related to his acquisition and/or distribution of Symantec software. Nothing in this letter shall be construed as a waiver or relinquishment of any of Symantec's rights or remedies.

Sincerely,

David Majors

**EXHIBIT  C**

Perry J. Viscounty
Direct Dial: 714-755-8288
perry.viscounty@lw.com

650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235 Fax: +1.714.755.8290
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Moscow |
| Barcelona | Munich |
| Beijing | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Riyadh |
| Frankfurt | Rome |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

October 14, 2010

## VIA U.S. MAIL AND EMAIL

Mike Rodenbaugh, Esq.
Rodenbaugh Law
548 Market Street
San Francisco, CA 94104

Re:   *Sales of Counterfeit Symantec Products by Johns Creek Software and Steven Cheatham*

Dear Mr. Rodenbaugh:

We represent Symantec Corporation ("Symantec") in the matter referenced above and write in response to your email to David Majors sent on June 11, 2010, regarding your clients Mr. Steven Cheatham and Johns Creek Software. As explained in Symantec's letter dated May 14, 2010, it has come to Symantec's attention that your clients have been selling counterfeit Symantec software products and making unauthorized use of Symantec's trademarks and copyrights.

Your email indicates that your clients "may be willing to work with Symantec to identify any actual counterfeiters of Symantec software," but asks Symantec to identify the exact goods that Symantec believes to be counterfeit. As stated in Symantec's May 14, 2010 letter, the counterfeit products include at least Norton AntiVirus 2010™. Based on the foregoing, Symantec again requests the following from your client:

1) Identification of the sources of the Norton AntiVirus 2010™ products sold on your clients' sites;

2) Identification of the customers to whom your clients have sold these products;

3) Copies of all documents that relate to your clients' sale or purchase of these products and any remaining inventory of potentially counterfeit goods in your clients' possession, custody or control. If you or your clients have any doubts about the authenticity of a particular product then Symantec may arrange for the products to be examined;

4) Agreement to immediately cease all sales of counterfeit and/or unauthorized Symantec products; and

LATHAM&WATKINSᴸᴸᴾ

5) Immediately transfer to Symantec all domain names that infringe Symantec's trademark rights.

Symantec has previously provided actual notice of your client's infringement, explaining that the unauthorized use of Symantec's trademarks and the unauthorized copying of Symantec's copyrighted works infringe Symantec's intellectual property rights in violation of state and federal law. Your clients' continuing distribution and sale of counterfeit Symantec products and use of its marks constitutes willful infringement. If your client continues infringing Symantec's copyrights and trademarks, Symantec may be forced to seek monetary damages, recovery of its attorneys' fees, injunctive relief and impoundment of counterfeit goods, among other remedies.

Symantec is still willing to attempt to resolve this matter amicably, provided that your client promptly agrees to the requests above. If your client does not cooperate promptly and fully, Symantec reserves its rights to take all necessary steps to enforce its rights.

Thank you for your prompt attention to this matter, and please do not hesitate to contact me if you have any questions regarding the foregoing.

Best regards,

Perry J. Viscounty
of LATHAM & WATKINS LLP

cc:     Andrew Fossum, Esq.

OC\1081560.1

EXHIBIT  D

Jennifer L. Barry
Direct Dial: (619) 238-3024
jennifer.barry@lw.com

600 West Broadway, Suite 1800
San Diego, California 92101-3375
Tel: +1 619.236.1234  Fax: +1 619.696.7419
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Moscow |
| Barcelona | Munich |
| Beijing | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Riyadh |
| Frankfurt | Rome |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

January 31, 2011

File No. 031501-0064

## VIA EMAIL AND FEDEX

Howard M. Neu, Esq.
Law Offices of Howard M. Neu, P.A.
1152 North University Drive
Pembroke Pines, FL 33024
Howard@neulaw.com

Re:   *Johns Creek Software and Steve Cheatham*

Dear Howard:

This letter follows up on our previous correspondence with you regarding the unlawful conduct of your clients Johns Creek Software and Steve Cheatham ("Johns Creek"). As you know, Johns Creek violated the terms of Symantec's System Builder program and Registered Partner Program, resulting in the termination of Johns Creek from those programs in September 2009. Despite that termination and despite your assurances in November 2010 that your clients would cease their illegal activities, Johns Creek has continued its sales efforts of purported Symantec products without Symantec's authorization, and through the unauthorized use of Symantec's trademarks and other intellectual property rights.

We also have evidence that Johns Creek has been marketing and selling counterfeit and gray market Symantec products, which is a willful violation of federal and state law.

It is imperative that Johns Creek immediately cease all of its illegal and unauthorized conduct. In particular, Johns Creek, and any person or entity working on is behalf or at its direction, must immediately:

1. Cease all marketing and sale of unauthorized Symantec products;

2. Remove all references to Symantec's trademarks and logos from all websites owned or operated by Johns Creek or its affiliates;

3. transfer all domain names to Symantec that contain any of Symantec's trademarks;

4. refrain from any future use of Symantec's trademarks as domain names, keywords or metatags;

SD\744384.1

Howard M. Neu, Esq.
January 31, 2011
Page 2

**LATHAM&WATKINS**LLP

5. refrain from making any future statements or claims that Johns Creek or its affiliates are authorized Symantec suppliers or distributors;

6. provide us with a list of all suppliers of any Symantec products sold since September 2009 and copies of the purchase records;

7. provide us with a list of all customers who have purchased Symantec-branded products from Johns Creek since September 2009.

Please confirm in writing by **February 4, 2011** that your clients will comply with the above demands. We will then forward you a written agreement memorializing this arrangement for your clients' signature.

Nothing contained in this letter constitutes an express or implied waiver of any of Symantec's rights or remedies, all of which are expressly reserved.

Sincerely,

Jennifer L. Barry
of LATHAM & WATKINS LLP

cc:    Perry J. Viscounty, Esq.

SD\744384.1

**EXHIBIT  E**

*Law Offices of*
## HOWARD M. NEU, P.A.
*SUITE 512*
*4839 S.W. 148th Avenue*
*Southwest Ranches, Florida 33330*

*Telephone: (954) 662-1816*
*Facsimile: (954) 337-2324*

February 9, 2011

Jennifer L. Barry
LATHAM & WATKINS, LLP
600 West Broadway
Suite 1800
San Diego, CA 92101

### Re: Johns Creek Software and Steve Cheatham

Dear Ms. Barry:

I must first correct a number of erroneous and libelous statements that you made in your letter of January 31, 2011. I can only assume that you are not an attorney and that the law firm for whom you work can therefore deny any culpability concerning the authorship of your libelous and slanderous statements.

Your very first sentence kind of gets you off on the wrong foot by stating **"...regarding the unlawful conduct of your clients Johns Creek Software and Steve Cheatham".** As I have indicated in my letter to Mr. David Majors on October 29, 2010, my clients have not engaged in any unlawful or illegal activities and to accuse them of doing so is libelous.

You then go on to say that I know that they violated the terms of Symantec's System Builder Program. Where did you come up with that supposition? For the record, I know of no such violations, and once again, your statements are false and libelous.

Your next false and libelous statement is "Despite that termination and despite **your assurances in November, 2010 that your clients would cease their illegal activities....".** I must request in the strongest terms that you immediately provide

to me any documentation that you may have where I assured you that my clients would "cease their illegal activities". If you are unable to produce such documentation, we WILL litigate to protect our integrity in the legal profession.

Next, you apparently have not been furnished with a copy of my letter of October 29, 2010 to Mr. David Majors wherein I stated unequivocally, **"All of the products sold by our client were not only authorized by Symantec, but were sold on Symantec's behalf."** This fact has not changed since that date. Therefore, your false, malicious and libelous statement that "We also have evidence that Johns Creek has been marketing and selling counterfeit and gray market Symantec products, which is a willful violation of federal and state law," must be immediately retracted unless you can provide such evidence to us within 72 hours of receipt of this letter.

Needless to say, unless you can back up your spurious, scandalous and malicious allegations with evidence and facts, we have no intention of performing any of the 7 requirements that you have outlined, and we will commence litigation against you for tarnishing our clients' reputations as well as my own.

Very truly yours,


Howard Neu, Esq.




Very truly yours,


Howard Neu, Esq.