IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br>a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHNS CREEK SOFTWARE, INC.,<br>a Georgia Corporation, STEPHEN<br>CHEATHAM, an individual, and<br>DOES 1-10,<br><br>    Defendants. | No. C 11-03146 WHA<br><br>**ORDER DENYING MOTION<br>TO DISMISS FOR LACK OF<br>PERSONAL JURISDICTION AND<br>MOTION TO DISMISS<br>OR TRANSFER FOR<br>IMPROPER VENUE AND<br>VACATING HEARING** |

### INTRODUCTION

In this action for trademark infringement and unfair competition, defendants move to dismiss for lack of personal jurisdiction and improper venue, and in the alternative, to transfer venue. For the reasons stated below, all of defendants' motions are **DENIED**.

### STATEMENT

Plaintiff Symantec Corporation is a Delaware corporation with its principal place of business in Mountain View. Symantec is one of the world's largest software companies with over 17,500 employees in over 40 countries. Plaintiff provides software products and related services to commercial and individual consumers. Many of plaintiff's consumer products are offered under the "Norton" brand, such as Norton AntiVirus and Norton Internet Securities. Plaintiff owns the rights to several trademarks, including SYMANTEC, NORTON, and NORTON ANTIVIRUS (Compl. ¶¶ 6, 11–12, 16–17).

Defendant Johns Creek Software, Inc. is a Georgia corporation with its principal place of business in Alpharetta, Georgia. Defendant Stephen Cheatham is CEO of Johns Creek Software. Defendants operate "multiple websites that purport to sell Symantec products, including at least: *nortons.com*, *nortonexpert.com*, *nortontechsupport.com*, *nortonhelp.com*, *nortonsoftwaredirect.com* and *mynortonstore.com*" (*id.* at ¶¶ 7–8).

Defendants participated in plaintiff's affiliate and partner programs in "the early to mid-2000s" and sold Norton products to consumers through their websites. In September 2009, plaintiff discovered that defendants "were selling Symantec's System Building software in an unauthorized manner as a standalone product" (*id.* at ¶ 25). Defendants also allegedly "were selling product keys without also selling the accompanying software, which would potentially allow customers to convert a trial version of Symantec's software product into a fully operational copy" (*ibid.*). Based on this conduct, plaintiff terminated defendants' participation in Symantec's programs in September 2009 and sent an email demanding that defendants "cease all use of Symantec's trademarks, logos, and any domain names that contained those trademarks" (Compl. Exh. A at 1).

Defendants allegedly continued to market and sell Symantec products on their websites despite the termination. In February 2010, plaintiff conducted a test by purchasing the Norton AntiVirus 2010 product from defendants' *mynortonstore.com* website. Once the product from defendants arrived, plaintiff determined that "the product key provided . . . was not the appropriate type of key assigned to this type of standalone purchase. Symantec further determined that the DVD was counterfeit" (Compl. ¶¶ 26–29). In May 2010, plaintiff sent a letter to defendants demanding they cease selling counterfeit Symantec products (Compl. Exh. B).

In June 2010, plaintiff conducted a second test purchase from *mynortonstore.com*. Plaintiff claims the product key was again incorrect and the DVD was counterfeit (Compl. ¶ 32). Plaintiff sent defendants a follow-up letter in October 2010, reiterating the demands of the first letter (Compl. Exh. C). In January 2011, plaintiff conducted a third test purchase with similar results, and sent a third letter to defendants (Compl. Exh. D). Defendants responded with a February 2011 letter denying any wrongdoing (Compl. Exh. E*)*.

2

On June 24, 2011, plaintiff filed this action in the Northern District, alleging trademark infringement, unfair competition and cybersquatting under the Lanham Act, copyright infringement under the Copyright Act, trafficking in counterfeit labeling/packaging, unfair competition under California Business & Professions Code Section 17200, and common law trademark infringement and unfair competition. Defendants move to dismiss for lack of personal jurisdiction and improper venue, and in the alternative move to transfer venue. This order follows full briefing.

**ANALYSIS**

**1. PERSONAL JURISDICTION.**

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 347 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). California's long-arm statute authorizes the exercise of jurisdiction on any basis not inconsistent with the state or federal Constitutions. CAL. CODE CIV. PROC. § 410.10. As such, the analysis of personal jurisdiction collapses into a single inquiry under federal due process.

Plaintiff has the burden of establishing the existence of jurisdiction. "In determining whether [plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts . . . must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted).

Personal jurisdiction may be either general or specific to the allegations in the complaint. *See Schwarzenegger*, 374 F.3d at 801–02. Plaintiff does not argue that general jurisdiction exists over defendants, only that it has made a prima facie showing of specific jurisdiction over defendants. Accordingly, only specific jurisdiction need be considered in this order. Specific jurisdiction exists when the suit arises out of or is related to the defendants' contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

3

The Ninth Circuit applies a three-element test for analyzing claims of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

If plaintiff succeeds in satisfying both of the first two elements, the burden shifts to defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.

### A. Purposeful Direction.

In tort cases such as trademark infringement, the Ninth Circuit typically inquires whether the defendant "purposefully directs" activities at the forum state by utilizing the "effects test" from *Calder v. Jones*, 456 U.S. 783 (1984). This test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

The first element of the test — an intentional act — is satisfied. Creation and operation of websites are intentional acts for purposes of the *Calder* test. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th Cir. 2010) (holding that creating and posting to websites constitute intentional acts).

The second requirement is that the intentional act be "expressly aimed" at the forum state. The express aiming requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Plaintiff contends that defendants have "engaged in multiple intentional acts expressly aimed at California and the Northern District" (Opp. 4). Plaintiff highlights three such acts. *First*, defendants operate interactive websites and "specifically targeted" this district by listing a

4

1 telephone number with a 650 area code on the support page of one such website. *Second*,
2 defendants have both customers and business partners in California. *Third*, defendants agreed to
3 this district in forum-selection clauses in contracts with both plaintiff and defendants' other
4 California business partners.

5       Defendants' websites could hardly be considered "passive." Defendants conduct
6 nationwide sales online, collect personal information about their customers, and communicate
7 with customers via the website (Opp. at 7). Defendants admit that a portion — "less than 5%"—
8 of their sales are to California residents (Br. 7). For a time the "Support" page of defendants'
9 *nortons.com* website listed a contact telephone number with a Silicon Valley, California area code
10 (*ibid.*). Plaintiff contends that this was meant to give the impression that defendants were
11 affiliated in some way with plaintiff.

12       Plaintiff further alleges defendants wrongfully sold counterfeit Norton products and used
13 plaintiff's trademarks, logos, and domain names (Compl. ¶¶ 25–26). Moreover, defendants were
14 members of plaintiff's affiliate and partner programs until 2009. The terms and conditions of this
15 agreement contained a forum-selection clause providing that any legal action arising from the
16 agreement would be settled in this district (Tyler Exh. A at 6). By the terms of this agreement,
17 defendants reasonably could have expected to be haled into California court. Although this suit is
18 not controlled by the agreement, the earlier clause shows that venue here once was thought to
19 have been reasonable for matters covered by that agreement. The "expressly aimed" element of
20 the *Calder* test has been satisfied.

21       The final prong of the "effects test" — causing harm that defendants know is likely to be
22 suffered in the forum state — is also met. Plaintiff alleges that defendants' conduct "interferes
23 with Symantec's goodwill and customer relationships and will substantially harm Symantec's
24 reputation as a source of high quality products, as well as dilute the substantial value of
25 Symantec's name and trademark" (Compl. ¶ 39). Plaintiff further alleges defendants were aware
26 that Symantec is located in this district based on the previous affiliate relationship between the
27 parties and on the fact that defendants promote themselves as "Norton software experts since
28 the 1980's" on their websites (Opp. 10).

5

Defendants contest purposeful direction, claiming they did not target California and made only "a meager amount of sales to California residents" (Br. 12). But defendants fail to identify exactly how many sales were to California residents. Five percent of sales over the many decades defendants have been in business seems more than "meager." Additionally, defendants targeted the forum state by selling plaintiff's products, using plaintiff's trademarks, and displaying a Silicon Valley phone number on one of defendants' websites. Accordingly, all three elements are met and plaintiff has made a prima facie showing of purposeful direction.

### B.   Connection to Forum-Related Activities.

To satisfy the second element of the specific jurisdiction test, plaintiff must show that its claims arise out of or relate to defendants' forum-related activities. In making this determination, courts in the Ninth Circuit inquire whether plaintiff would have been injured *but for* defendants' conduct directed towards the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). There is no doubt that plaintiff's claims arise from defendants' forum-related activities. The present action arises out of defendants' alleged sales of counterfeit software on their interactive websites, a portion of which were made to California residents.

Defendants contend that because they never performed any actions geographically within the state of California, this element has not been satisfied. Not so. This element is satisfied if *but for* defendants' conduct aimed at the forum state, plaintiff's claims would not have arisen. Plaintiff has demonstrated this and thus has met the second element of the specific jurisdiction analysis.

### C.   Reasonableness.

Because plaintiff has satisfied the first two elements of the specific jurisdiction inquiry, the burden now shifts to defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 803 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). Reasonableness is assessed by weighing seven factors:

6

1. The extent of defendants' purposeful interjection into the forum state's affairs;

2. The burden on defendants of litigating in the forum;

3. The extent of conflict with the sovereignty of defendants' state;

4. The forum state's interest in adjudicating the dispute;

5. The most efficient judicial resolution of the controversy;

6. The importance of the forum to plaintiff's interest in convenient and effective relief; and

7. The existence of an alternative forum.

*CE Distrib., LLC v. New Sponsor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Defendants have not met their burden of showing that the exercise of specific jurisdiction would be unreasonable. Only two of the seven factors weigh in defendants' favor. An alternative forum — the Northern District of Georgia — exists. Additionally, defendants argue that litigating in California would be tremendously burdensome "given serious medical conditions and/or disability of two of the [company's] principals, and the primary care-giving role of the third" (Br. 17). While litigation here will undoubtedly present a challenge, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in past days." *CE Distrib.*, 380 F.3d at 1112. Defendants are also represented by local counsel, so the burden on defendants *personally* will not be as heavy. Although these two factors favor defendants, they are not enough to tip the scale in defendants' favor.

The remaining five factors either weigh in favor of plaintiff or are neutral. Defendants undoubtedly interjected themselves into California. Approximately five percent of sales through their interactive websites were to California residents. Defendants have entered into several contracts with California-based companies, including plaintiff, and have agreed to jurisdiction in the forum state. Defendants tout themselves as "experts" of products produced by plaintiff, a California-based corporation. Further, California has an interest in adjudicating the copyright and trademark infringement claims of its residents, and defendants have shown no conflict in interstate sovereignty. Defendants claim that litigating in the Northern District would be

7

1 inefficient because all of defendants' evidence and witnesses are located in Georgia. All of
2 defendants' transactions, however, are conducted online, and modern document storage and
3 retrieval make transporting documents less burdensome. Additionally, defendants' entire
4 company is made up of only three employees, so the number of witnesses who would need to
5 travel to the District is not overwhelming. These five factors together outweigh the two in
6 defendants' favor.

7 Plaintiff established the first two elements of the specific jurisdiction inquiry, and
8 defendants have not met their burden of showing that the exercise of jurisdiction is unreasonable.
9 Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

**2. MOTION TO DISMISS FOR IMPROPER VENUE.**

Defendants next move to dismiss all claims for improper venue. Plaintiff's federal copyright claim and remaining claims are addressed in turn.

**A. Copyright Claim.**

Venue for copyright claims is governed by 28 U.S.C. 1400(a), which provides that a suit "may be instituted in the district in which the defendant or his agent resides or may be found." Our court of appeals has interpreted Section 1400(a) to mean that venue is proper "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Brayton Purcell*, 606 F.3d at 1126. This order already has found that personal jurisdiction exists over defendants. Accordingly, venue is proper as to the copyright claim.

**B. Remaining Claims.**

The remainder of plaintiff's claims are subject to the general venue statute. 28 U.S.C. 1391(b)(2) provides that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship" may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In evaluating venue in trademark infringement cases involving internet transactions, courts look to whether a defendant could be said to have "entered" the district in a way that would create confusion for plaintiff's customers. *Adobe Sys. Inc. v. Childers*, No. 10-cv-03571, 2011 WL 566812, at *8 (N.D. Cal. Feb. 14, 2011) (Fogel, J.).

Defendants maintain that venue is not proper because "all activities of the [d]efendants have occurred in Georgia, where all of their witnesses, documents and computers are located" (Reply Br. 11). Defendants further allege that the 650 telephone number displayed on their "Support" webpage was selected for ease of recall with no intent to mislead (*id.* at 12). They do not dispute, however, that allegedly infringing products were available for purchase in this district through their websites. *See Ansel Adams Publ'g Rights Trust v. PRS Media Partners*, No. C 10-03740, 2010 WL 4974114, at *2 (N.D. Cal. Dec. 1, 2010) (White, J.) (holding that venue was proper where defendants advertised allegedly infringing prints on a website accessible to consumers in the Northern District of California and accepted purchases directly through the website). Defendants further admit that approximately five percent of the sales through these interactive websites were made to California residents. Through these acts, defendants "entered" this district in a way that would create confusion for plaintiff's customers. Plaintiff has thus shown venue to be proper as to all claims. Accordingly, defendants' motion to dismiss for improper venue is **DENIED**.

### 3. MOTION TO TRANSFER VENUE.

Defendants move in the alternative to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. 1404(a). Section 1404(a) states in pertinent part: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have broad discretion when considering such factors as convenience and fairness under Section 1404(a). *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000). The district court must consider both private factors concerning the convenience of the parties and witnesses and public factors concerning the interest of justice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

#### A. Private Factors.

The district court must consider private convenience and fairness factors, including ease of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and relative convenience to witnesses. *Ibid.*

9

1    The first factor concerns location of sources of proof. Defendants claim that "the bulk of
2 the relevant evidence is in Georgia," including all of defendants' documents and records (Br. 24).
3 Yet technological advances in document storage and retrieval make transporting documents much
4 less burdensome. Defendants do not argue that transportation of these documents would present
5 an undue burden. This factor weighs slightly in favor of transfer, but does not carry
6 substantial weight.

7    The next factor is plaintiff's choice of forum. Defendants repeatedly suggest that
8 plaintiff's "choice of forum should be afforded minimal weight in determining whether to transfer
9 the case to a more convenient forum" (Br. 24). There is, however, a general presumption in favor
10 of plaintiff's choice of forum, and "defendant must make a strong showing of inconvenience" to
11 overcome that presumption. *Decker Coal*, 805 F.2d at 843. Defendants' only other argument is
12 that they have minimal contacts within the state of California. This order has already determined
13 that defendants have contacts sufficient to trigger personal jurisdiction. This factor thus weighs
14 against transfer.

15   The third factor is the convenience of parties and witnesses. Defendants claim that all
16 three of their "employees/principals [have] serious medical conditions, which make travel
17 oppressively burdensome, and they also care for the 84-year old family matriarch" (Br. 25).
18 Further, all of defendants' "key non-party witnesses" such as "authorized distributors, as well as
19 any forensic experts that are required" are located in Georgia (*ibid.*). Defendants do not describe
20 the testimony of these witnesses nor explain its relevance. *See Williams v. Bowman*, 157 F. Supp.
21 2d 1103, 1108 (N.D. Cal. 2001) (Walker, J.) ("To demonstrate inconvenience of witnesses, the
22 moving party must identify relevant witnesses, state their location and describe their testimony
23 and its relevance."). Moreover, plaintiff contends that these distributors have offices in
24 California, "so they are equally available as witnesses in this [d]istrict" (Opp. 17). It would of
25 course be more convenient for defendant corporation, made up of three employees, to litigate in
26 Georgia. But a transfer of venue would merely transfer defendants' inconvenience to plaintiff.
27 On the whole, the private factors weigh against transfer.
28

### B. Public Interest Factors.

The district court must also consider public interest factors such as relative degree of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. *Decker Coal*, 805 F.2d at 843.

Defendants offer little to show why these factors would favor a transfer. With regard to degree of court congestion, defendants in their reply attack plaintiff's statistics as "old" and "unreliable," but offer no alternate authority, merely concluding that "predicting the likely time to trial in any case is guesswork, and there is no reason to believe the case will be adjudicated faster here than in Georgia" (Reply Br. 15). Defendants have failed to demonstrate any public interest reason supporting their motion to transfer venue.

Defendants moving to transfer an action bear the burden of making a strong showing of inconvenience. Here, defendants have not carried that burden. The relevant public and private factors have not been shown to favor a transfer. Accordingly, defendants' motion to transfer the action pursuant to 28 U.S.C. 1404(a) is **DENIED**.

### CONCLUSION

For all of the above stated reasons, defendants' motion to dismiss for lack of personal jurisdiction, motion to dismiss for improper venue, and motion to transfer venue are all **DENIED.** Plaintiff's request for expedited discovery is **DENIED AS MOOT**. The motion hearing previously set for September 15, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated: September 12, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11