Michael L. Rodenbaugh
California Bar No. 179059
Erin Dennis Vivion
California Bar No. 262599
**RODENBAUGH LAW**
548 Market Street
San Francisco, CA  94104
(415) 738-8087 phone/fax
info@rodenbaugh.com

Howard Neu, Esq.
Florida Bar No. 108689
(admitted *pro hac vice*)
4839 S.W. Volunteer Road
Suite 512
Southwest Ranches, Florida 33330
954-662-1816 phone
howard@neulaw.com

Attorneys for Defendants,
JOHNS CREEK SOFTWARE, INC.,
and STEPHEN CHEATHAM

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION, a Delaware Corporation,<br>　　　Plaintiff,<br>v.<br><br>JOHNS CREEK SOFTWARE, INC., a Georgia Corporation, STEPHEN CHEATHAM, an individual, and DOES 1-10,<br>　　　Defendants.<br>------------------------------------------------<br>JOHNS CREEK SOFTWARE, INC., a Georgia Corporation,<br>　　　Counterclaimant,<br>v.<br><br>SYMANTEC CORPORATION, a Delaware Corporation, and Does 1 through 10,<br>　　　Counter-Defendants. | Case No. CV 11-03146-WHA<br>[Assigned for All Purposes to:<br>Hon. William Alsup, Courtroom 8]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date: January 5, 2012**<br>**Time: 8:00 am**<br>**Courtroom: 8, 19th Floor**<br>**Judge: William H. Alsup** |

**PLEASE TAKE NOTICE** that on January 5, 2012, at 8:00 A.M., or as soon thereafter as the Court will hear counsel, in Courtroom 8 of the United States District Court, Northern District of California, Defendants Johns Creek Software, Inc. and Stephen Cheatham (collectively "JCS" or "Defendants") will, and hereby do, move the Court to dismiss all the claims in Plaintiff Symantec's complaint, for failure to state any claim upon which relief can be granted, and therefore, for judgment on the pleadings with respect to all claims in the Complaint.

JCS makes this motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(c), on grounds that Defendants are entitled to a judgment dismissing the Complaint in light of the pleadings, combined with matter properly subject to judicial notice. JCS relies on the following points and authorities in support of the Motion, the supporting Declaration of Michael Rodenbaugh and Exhibits, as well as additional points and authorities and/or evidence which may be presented in Reply and/or at any oral argument on the Motion.

## INTRODUCTION AND STATEMENT OF FACTS

The Complaint alleges that Symantec offers its software products for sale (Compl. ¶ 14), and that such software is activated through a "product key." (*Id.* ¶ 15). The Court may take judicial notice that Symantec sells its software products to authorized distributors who, in turn, resell the products that eventually are sold to end-users of the software. *See* Declaration of Michael Rodenbaugh in Support of Defendants' Motion ("Rodenbaugh Decl."), Exhibit A (Symantec's memorandum in support of its motion for summary judgment submitted by Symantec on Jan. 4, 2008 in *Symantec Corp. v. Logical Plus*, 20008 WL 459885 (N.D. Cal. 2008, where Symantec expressly asserts that this is an undisputed fact in Point II.A (p. 4) of its brief – "software is sold to authorized distributors who, in turn, resell the product that eventually ends up in the hands of end-users"). Furthermore, Symantec alleges that there is no licensing arrangement with Defendants. (Compl. ¶ 60).

Construing the facts in the light most favorable to the Plaintiff, the Defendants at least had an agency relationship with Symantec in the early to mid-2000s, as resellers on a commission basis (Compl. ¶ 23), and have continued to sell Symantec products subsequently

thereafter. (Compl. ¶¶ 27, 28.) Plaintiff claims that in February 2010, a Symantec DVD provided by Defendant to Plaintiff's investigator was "counterfeit." (Compl. ¶ 29.) Absent are any allegations that Symantec undertook forensic examination of any kind that could factually support such a legal conclusion, and, to the contrary, Symantec conceded that the product key sold with the back-up DVD in fact unlocked genuine Symantec software. *Id.*

JCS has owned Norton-formative domains since at least 1998 as a matter of public record, of which this Court may take judicial notice. *See* Rodenbaugh Decl. Exhs. B-C (public WHOIS records of *nortons.com* domain registration, of which the Court may take judicial notice). The first one, *nortons.com*, was used in connection with the famous NORTON motorcycle-brand for many years, which the Court may take judicial notice based on public web archive records from 2000-2001. *See* Rodenbaugh Decl., Exhs. D-F (evidence of public internet archives, of which the Court may take judicial notice).

## **LEGAL ARGUMENT**

Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *E.g., Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The Court may take judicial notice of certain materials, such as matters of public record, in deciding such a motion. *See*, *e.g., U.S. v. Richie*, 342. F.3d 903, 908-09 (9th Cir. 2003); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007).

There is an important difference whether a defendant has possibly acted unlawfully, or has plausibly done so. So to decide a motion to dismiss for failure to state a claim, a court is allowed to draw upon its own common sense and judicial experience to rule out cases where the plaintiff's allegations create only a sheer possibility of wrongdoing. *See generally, Ashcroft v. Iqbal*, 556 U.S. 662, 128 S.Ct. 1937, 1949 (2009). While a court must accept as true all of the factual allegations in the Complaint, this does not require a court to accept as true any allegations that contradict matters properly subject to judicial notice. *E.g., Mack v. City of Los Angeles*, 250

F.3d 668, 689 (9th Cir. 2001).  Nor must the court accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *E.g., St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Plaintiff Symantec's obligation to properly allege the grounds of entitlement to relief requires more than "labels" or "formulaic" recitation of elements.  *E.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere suspicion of a legally cognizable right of action does not give rise to a claim, and a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *Ibid*.  In this case, Symantec has offered only conclusory and contradictory allegations, and its claims are clearly belied by public record evidence.

### 1. Plaintiff's Claim for Cyberpiracy Should be Dismissed

Under the Anti-cybersquatting Consumer Protection Act ("ACPA"), a person can be liable only if he/she had, at the time the domain was registered and used, "a bad faith/ intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A)).  This is proved impossible by the evidence of the registration and use of the *nortons.com* domain name.  (Rodenbaugh Decl., ¶¶ 3-7 (Exhs. B-F.))  JCS' providing information about the Norton motorcycle was a bona fide offering of services and noncommercial in nature.  This evidence clearly proves JCS' good faith in registering and using the domain, which is an absolute defense to an ACPA claim.  15 U.S.C. § 1125(d)(1)(B)(ii).

Plaintiff concedes that their products are offered for sale through third-parties, and that JCS' websites have been used by Defendants in the offering of Symantec products.  (Compl. ¶¶ 14, 23)  The Court should grant Defendants' judgment on the pleadings with respect to the cyberpiracy claim, because Plaintiff Symantec has not alleged any prior conduct of JCS to indicate bad faith.  Furthermore, the statute expressly states that "bad faith" shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the registration and use of the domain name was a fair use or otherwise lawful.  15 U.S.C. § 1125(d)(1)(B)(ii).  The Court should not allow this subsection of the Lanham Act to be

used as ammunition in litigation to conclude a business relationship that has gone sour. The initial registration and use of the nortons.com domain had nothing to do with Symantec, but with Norton motorcycles. Subsequent use of all of JCS' Norton-formative domain names has been with Symantec's express permission (Complaint, ¶ 23), at least until one lawyer at Symantec unilaterally decided to terminate the business relationship without cause. Symantec cannot use the cybersquatting statute to take away JCS' rightful property without compensation, and therefore this claim must be dismissed.

2. <u>Plaintiff's Claims for Trademark Infringement Should be Dismissed.</u>

Symantec's trademark infringement claims also must fail. Trademark law does not reach the sale of genuine goods bearing a true mark, even though such sale is without the mark owner's consent. *See, e.g., American. Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 585 (9th Cir. 2005) (*quoting NEC Elecs. v. CAL Circuit Abco,* 810 F.2d 1506, 1510 (9th Cir.1987) ("[T]rademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.")).

The Plaintiff concedes (Compl. ¶¶ 29, 32) that the software activated by the product keys sold by JCS is genuine Symantec software, not competitive product. *See Summit Technology, Inc. v. High-Line Medical Instruments, Co., Inc*., 922 F.Supp. 299, 307-09 (C.D. Cal 1996) (dismissing plaintiff's trademark infringement claims for failure to state a claim because there could not be a likelihood of confusion as to the source of the goods where defendant was selling plaintiff's genuine product.); *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074-76 (9th Cir.), *cert. denied,* 516 U.S. 914 (1995) (holding that resale by a purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition, and finding that "[t]he 'first sale' rule is not rendered inapplicable merely because consumers erroneously believe the reseller is affiliated with or authorized by the producer."); *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 80 (2nd Cir. 1994) (finding that a trademark action will not arise where the goods being sold are genuine goods and that the unauthorized

distribution of genuine goods can only constitute trademark infringement if there is accompanying consumer confusion: "[g]enerally, courts find consumer confusion only where consumers, relying on the reputation of a trademark, buy a product that they think is safe or of a certain quality, and then subsequently find out that they have actually purchased an inferior item.").

Further, the only sales alleged to be infringing were those to Symantec itself, purchased via its agent. (Compl., ¶¶ 28, 32, 35.) Because Symantec knew exactly for what purpose it was purchasing its own products and admittedly discovered they were genuine Symantec products, there can not have been "consumer confusion" as to the origin or source of its own products. In any event, Symantec has not alleged Defendants sold non-genuine goods; therefore, its allegations of trademark infringement should be dismissed on the pleadings for failure to state a claim.

3. <u>Plaintiff's Copyright and Counterfeit Labeling Claims Should be Dismissed.</u>

It is conceded that the product keys sold by JCS unlocked genuine Symantec software. (Complaint, ¶ 29, 32.) Nowhere in the Complaint does Plaintiff allege any illegal duplication of software code. There are no allegations that fake products were being distributed and sold by JCS with the purpose of confusing the public into believing JCS was selling the true Symantec product. There is no dispute that JCS was, in fact, selling true and genuine Symantec software keys. It is a matter of public record that Symantec understands that an expert is necessary to determine whether CDs are genuine, *i.e.*, whether they contained authorized software, and whether they are produced where they purport to have been produced. Rodenbaugh Decl., Ex. A, at 10 (Argument B(II)(8)(Point 3) ("An expert witness is necessary to determine whether CDs are genuine, *i.e.*, whether they contain authorized software, and whether they are produced where they purport to have been produced."). Absent from the Complaint are any allegations that Symantec undertook any such forensic examination of the product here, because there is no question that the product keys sold by Defendants unlocked genuine Symantec software. (Complaint, ¶ 29, 32.) Having conceded that genuine articles were sold, it would be improper to

assume that the Plaintiff can prove facts that it has not alleged, such as that Symantec undertook forensic examination of any kind to conclude that codes offered for sale by Defendants unlocked any products that were not genuinely Symantec articles. *See, e.g., Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983) (finding that activities that might constitute a breach of contract are not subject to review under anti-trust law: "It is not, however, proper to assume that the Union can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.").

Furthermore, this is not a case where the Complaint alleges that its software is licensed to Defendants pursuant to an accompanying software license agreement (SLA). Instead, Plaintiff concedes its software is <u>sold</u> as a product. (*See*, *e.g.*, Compl., ¶¶ 13-15, 32); Rodenbaugh Decl. Ex. A, at 5 (*Symantec Corp.*, 2008 WL 459885 ("Symantec does not engage in direct sales of its software or its component parts to end-user consumers. Instead, the software is sold to authorized distributors who, in turn, resell the product that eventually ends up in the hands of end-users….Symantec does not control or set the resale price of the NSW software."). Symantec sells its software to authorized distributors for express purpose of resale to end-users. *Id.* Therefore, Symantec cannot establish a prima facie case of copyright infringement merely by showing ownership of a valid copyright. Plaintiff must allege that there was a violation by Defendants of at least one of the exclusive rights granted to copyright owners by the Copyright Act (the "Act"). *E.g., Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Because Plaintiff concedes that its product is sold through a distribution chain to end-users, Defendants are entitled to judgment on the pleadings under the "first sale" doctrine embodied in § 109(a) of the Copyright Act. (Complaint, ¶ 29, 32) Subsequent owners are permitted to sell or otherwise dispose of those copies without authorization by Plaintiff, and so the Copyright Act does not prevent such further disposition. *See*, *e.g., UMG Recordings Inc. v. Augusto*, 628 F.3d 1175 (9th Cir. 2011). This is an easy case to dispose of on the pleadings because there is no issue as to whether Symantec's software transfers amounted to sales, or only licenses. The Plaintiff's allegations assert that they did not label the arrangement as a license, but rather as a sale.

(Compl. ¶¶ 13-15, 32; Rodenbaugh Decl. Ex. A.) Therefore, Plaintiff's defense of "first sale" doctrine is entitled to judgment on the pleadings. *See, e.g., Bobbs-Merrill Co. v. Strauss*, 210 U.S. 339, 351 (1908) (holding that when copies of copyrighted products are sold, any conclusory allegations to expand the distribution right by labeling the Defendants "infringers" is firmly rejected).

    4.    <u>Plaintiff's Claims for Unfair Competition Should be Dismissed.</u>

Plaintiff's claims of unfair competition are entirely reliant upon the allegations of cybersquatting, copyright infringement and trademark infringement set forth in the Complaint. Since those claims must all be dismissed for failure to state a claim, so too must these claims be dismissed.

**CONCLUSION**

This case is a business relationship gone sour, not an intellectual property dispute. As aforesaid, JCS is entitled to judgment on the pleadings with respect to Symantec's fabricated intellectual property claims. Even if this Court is inclined not to dismiss the entire Complaint, of course the Court can grant partial judgment on the pleadings with respect to individual causes of action. *E.g., Moran v. Peralta Community College Dist.*, 825 F.Supp.891 (N.D. Cal. 1993). However, based on the foregoing argument and authorities, Defendants respectfully request that the Plaintiff's pleadings be dismissed in their entirety with prejudice, or in the alternative, that the causes of action be narrowed dow to those which the Court finds to assert *plausible* accusations of wrongdoing, rather than mere *possibility* of wrongdoing. *E.g., Iqbal*, 128 S.Ct at 1947.

Dated: December 1, 2011        Respectfully submitted,

**RODENBAUGH LAW**

By:   /s/ *Mike Rodenbaugh*
       Michael L. Rodenbaugh

*Attorneys for Defendants and Counterclaimants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused the foregoing Motion and Supporting Memorandum to Dismiss for Judgment on the Pleadings to be served on opposing counsel via the court's ECF system.

Dated: December 1, 2011

*/s/ Mike Rodenbaugh*
Mike Rodenbaugh