IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION, a Delaware Corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHNS CREEK SOFTWARE, INC., a Georgia Corporation, STEPHEN CHEATHAM, an individual, and DOES 1–10,<br><br>  Defendants. | No. C 11-03146 WHA<br><br>**ORDER DENYING MOTION TO DISMISS AND VACATING HEARING** |

**INTRODUCTION**

In this action for cybersquatting, trademark and copyright infringement, defendants move to dismiss for failure to state a claim. For the reasons set forth below, the motion is **DENIED**. The hearing scheduled for January 5, 2012, is **VACATED**.

**STATEMENT**

The facts of this action have been stated in a previous order (Dkt. No. 32). In brief, plaintiff Symantec Corporation provided software products and related services to commercial and individual consumers. Many of Symantec's consumer products were offered under the "Norton" brand, such as Norton AntiVirus. Defendant Johns Creek Software, Inc. operated multiple websites that purport to sell Symantec products, including: nortons.com, nortonexpert.com, nortontechsupport.com, nortonhelp.com, nortonsoftwaredirect.com and

mynortonstore.com. Defendant Stephen Cheatham was CEO of Johns Creek Software (Compl. ¶¶ 7–8).

Nevertheless, defendants participated in Symantec's affiliate and partner programs in "the early to mid-2000s" and were authorized sellers of Norton products to consumers through their websites. In September 2009, Symantec discovered that defendants "were selling Symantec's System Building software in an unauthorized manner." Defendants also "were selling product keys without also selling the accompanying software, which would potentially allow[ed] customers to convert a trial version of Symantec's software product into a fully operational copy" (*id.* at ¶ 25). Based on this misconduct, Symantec terminated defendants' participation in Symantec's programs in September 2009 and sent an email demanding that defendants "cease all use of Symantec's trademarks, logos, and any domain names that contained those trademarks" (Compl. Exh. A).

Defendants continued to market and sell Symantec products on their websites despite the termination. In February 2010, Symantec conducted a test by purchasing the Norton AntiVirus 2010 product from defendants' mynortonstore.com website. Once the product from defendants arrived, Symantec determined that "the product key provided . . . was not the appropriate type of key assigned to this type of standalone purchase. Symantec further determined that the DVD was counterfeit" (Compl. ¶¶ 26–29). In May 2010, Symantec sent a letter to defendants demanding they cease selling counterfeit Symantec products (Compl. Exh. B). In June 2010, Symantec conducted a second test purchase from mynortonstore.com. Again, the product key was incorrect and the DVD was counterfeit (Compl. ¶ 32). Symantec sent defendants a follow-up letter in October 2010, reiterating the demands of the prior letter (Compl. Exh. C). In January 2011, Symantec conducted a third test purchase with similar results, and sent a third letter to defendants (Compl. Exh. D). Defendants responded with a February 2011 letter denying any wrongdoing (Compl. Exh. E).

On June 24, 2011, Symantec filed this action alleging trademark infringement, unfair competition and cybersquatting under the Lanham Act, copyright infringement under the Copyright Act, trafficking in counterfeit labeling/packaging, unfair competition under California

Business & Professions Code Section 17200, and common law trademark infringement and unfair competition. Defendants move to dismiss for failure to state a claim upon which relief can be granted.

**ANALYSIS**

**1. STANDARD OF REVIEW.**

Defendants bring this motion under both Rule 12(b)(6) and Rule 12(c). Defendants' motion to dismiss, however, is properly framed as a Rule 12(c), not Rule 12(b)(6), because they answered the complaint months ago (Dkt. No. 40).

"The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "[T]he allegations of the non-moving party must be accepted as true . . . . Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

The Court may take judicial notice of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). In a motion to dismiss, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**2. ACPA CLAIM.**

Defendants argue that the Anti-Cybersquatting Consumer Protection Act ("ACPA") claim should be dismissed because the pleadings fail to allege bad faith intent at the time of registration. In support, defendants request judicial notice of screenshots of the nortons.com website in

3

1   2000–2001 as evidence that the website was used in good faith to provide information about
2   Norton motorcycles (Br. 4).[1]

3   A person is liable under the ACPA if that person has a bad faith intent to profit from a
4   mark and registers, traffics in, or uses a domain name that is identical or confusingly similar to
5   that mark. 15 U.S.C. 1125(d)(1)(A). There is no requirement that the bad faith intent exists at
6   registration and during the entire course of use of the domain name. *DSPT Int'l, Inc. v. Nahum*,
7   624 F.3d 1213, 1219–20 (9th Cir. 2010) ("Evidence of bad faith may arise well after registration
8   of the domain name.").

9   Symantec's alleges that defendants used the nortons.com domain name to sell counterfeit
10  Norton software products in bad faith after their partnership was terminated (*see, e.g.*, Compl. ¶¶
11  27–35, 69–71). Symantec supports its claim of bad faith by alleging that defendants continued to
12  sell counterfeit Symantec products even after defendants were contacted about violations of
13  Symantec's branding and trademark policies (Compl. ¶ 23), and provided written notice that their
14  continued use of the domain names was unauthorized and unlawful (Compl. ¶ 26, Exh. A).

15  Defendants' argument that they had good faith intentions when registering the
16  nortons.com domain name, even if true, is not fatal to Symantec's ACPA claim. Defendants cite
17  *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011), for the purported requirement that bad
18  faith intent must exist at the time of registration. In *GoPets*, our court of appeals stated *in dicta*
19  that "to prevail on its ACPA claim, [plaintiff] must show . . . 'bad faith intent' at the time of
20  registration." *Id*. at 1030 (citing 15 U.S.C. 1125(d)(1)(A)); *but see DSPT Int'l, Inc. v. Nahum*,
21  624 F.3d 1213, 1219–20 (9th Cir. 2010) ("Evidence of bad faith may arise well after registration
22  of the domain name."). *Even if* law requires bad faith at the time of registration, this can be
23  proven by subsequent circumstantial evidence. Symantec has adequately pled its ACPA claim.

---

[1] Defendants append cached copies of the nortons.com website from 2000–2001 (Exhs. D–F). Symantec objects to the request for judicial notice. The appended copies are missing large amounts of content and links. The accuracy cannot be readily determined. Judicial notice of the cached copies of nortons.com website is **DENIED**.

### 3. TRADEMARK INFRINGEMENT CLAIM.

Defendants argue that Symantec's trademark claims fail because they were selling "genuine" Symantec products (Br. 5). Defendants also argue that the trademark claims should be dismissed because Symantec only identified test sales to itself, so "there [could] not have been 'consumer confusion' as to the origin or source of its own products" (Br.6).

To prevail on a claim of trademark infringement, a party "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). Confusion ordinarily does not exist when a genuine product bearing a true mark is sold. Whether the products are "genuine" depend on whether consumers are getting exactly the same product, both in specification and quality, from alleged infringers as they would from owner. *American Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 586 (9th Cir. 2005).

Symantec alleges that the products being sold by defendants were counterfeit and unauthorized (Compl. ¶ 29 ("Symantec determined that the product key provided . . . was not the appropriate type of key . . . [and] further determined that the DVD was counterfeit"); ¶ 32 ("No documentation or packaging was included . . . and the product key provided was once again [an inappropriate] product key. The DVD was again determined to be counterfeit.")). To sum up, Symantec alleges that defendants were selling a DVD (of unknown origin) burned with Symantec software that was inappropriately activated as the "System Builder" version (Compl. ¶¶ 32–34). The DVDs were counterfeit because they did not originate from Symantec and were likely not the same type used for authorized sales. Defendants' unauthorized products were also counterfeit because they lacked quality control: Symantec was not able to decide which software version to activate and had no control over the distribution by defendants. Symantec also alleges that the "System Builder" version was not intended to be sold as a standalone product (Compl. ¶ 13). Defendants' sale of an inappropriate version of Symantec software could cause differences in technical support, updates, and warranty coverage. Defendants were also allegedly selling product keys without accompanying software, an unauthorized practice that did not allow

5

Symantec to control the quality of the software activated (Compl. ¶ 25). Taking the factual allegations in the pleadings as true, defendants were not selling genuine products.

Trademark infringement claims require a *likelihood of confusion*, not actual confusion. Symantec does not need to identify actual consumers who were confused in its pleadings. Symantec has adequately alleged a likelihood of confusion (*see* Compl. ¶¶ 42–47, 57–61, 102–106).

### 4. COPYRIGHT INFRINGEMENT CLAIM.

Defendants argue that Symantec's copyright claim must be dismissed because Symantec did not conduct a forensic examination to determine if there was any illegal duplication of software code (Br. 6). Defendants also argue that Symantec's copyright claim must be dismissed based on the first-sale doctrine (Br. at 7).

Copyright owners have exclusive rights of reproduction, preparation of derivative works, and distribution. 17 U.S.C. 106. Under the first-sale doctrine, sale of a lawfully made copy terminates copyright holder's authority to interfere with subsequent sales or distribution of that particular copy. 17 U.S.C. 109. When determining whether a software user is a licensee or owner, a court first considers whether the copyright owner specifies that a user is granted a license, and then the court considers whether the copyright owner significantly restricts the user's ability to transfer the software, and finally the court considers whether the copyright owner imposes notable use restrictions. *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1111 (9th Cir. 2010).

Symantec adequately pleads its copyright infringement claim. Symantec alleges that defendants sold counterfeit copies of Symantec's software in an unauthorized manner. Symantec determined that defendants were selling counterfeit copies of its software by examining DVDs sold by defendants (Compl. ¶¶ 29, 32, 80). Contrary to defendants' assertion, Symantec does not need to allege that it performed a forensic examination of the allegedly counterfeit DVDs to claim copyright infringement.

Contrary to defendants' contentions, Symantec did not admit that its software was sold, and not licensed, to defendants (Br. 7). Defendants cite four paragraphs in the complaint and a

6

paragraph from a motion made by Symantec years ago in a completely unrelated case,[2] and take the word 'sold' out of context to conclude that Symantec has admitted that its software products are sold and not licensed. Having reviewed the record, this order finds that none of defendants' citations are admissions by Symantec that its software was sold, and not licensed, for purposes of the first-sale doctrine. Symantec alleges that defendants' use and sale of Symantec software was *unauthorized*. Symantec also alleges that defendants' use of the "System Builder" product key to unlock the Norton software was unauthorized. Symantec has adequately pled copyright infringement.

### 5. COUNTERFEIT LABELING CLAIMS.

Defendants' motion to dismiss the counterfeit labeling claims is based on their earlier argument that they were selling genuine products. Because this order finds that defendants' products were not genuine, if the pleadings are taken as true, defendants' motion to dismiss the counterfeit labeling claims is **DENIED**.

### 6. UNFAIR COMPETITION CLAIMS.

Defendants' motion to dismiss the unfair competition claims is based on their earlier arguments that the cybersquatting, trademark, and copyright claims should be dismissed. Because this order finds that Symantec's cybersquatting, trademark, and copyright claims have been adequately pled, defendants' motion is **DENIED**.

### CONCLUSION

For the reasons stated, defendants' motion to dismiss is **DENIED**. The hearing scheduled for January 5, 2012, is **VACATED**.

**IT IS SO ORDERED.**

Dated: January 3, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] Defendants append a Westlaw printout of Symantec's motion for summary judgment in an unrelated case, *Symantec Corp. v. Logical Plus*, Civ. 06-7963 (N.D. Cal. Jan. 4, 2008). Judicial notice of this motion is **GRANTED**.

7